# UNITED STATES DISTRICT COURT FILED

for the

Eastern District of California

**JAN 19 2017**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the Matter of the Search of                    )
                                                  )
                                                  )
Accounts associated with Facebook User IDs "Monica )
Merlin" and "KaydaBoy T-Fetti"                    )
                                                  )
                                                  )

Case No.

**2:17-SW-0037    EFB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ District of _____ Massachusetts _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) | Sex Trafficking of Children |
| 18 U.S.C. § 1594(c) | Conspiracy to Engage in Sex Trafficking of Children |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew D. Forristel, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-19-2017

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>Accounts associated with Facebook User IDs "Monica Merlin" and "KaydaBoy T-Fetti" | )<br>)<br>)<br>)<br>)<br>) |

Case No. 2: 1 7 - SW - 0 0 3 7   EFB

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before *2-2-2017* *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *1-19-2017* *at 10:35 A.M.*

Judge's signature

City and state:      Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                      Date

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew D. Forristel, ("Your Affiant"), a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Sacramento Division, Chico Resident Agency, being duly sworn, depose and state the following.

1.     I have been a Special Agent with the FBI since 2003.  I am currently assigned to the Sacramento Division, Chico Resident Agency.  Some of my investigative responsibilities include the investigation of criminal violations relating to child exploitation, including the investigation and prosecution of violent crimes, child abductions, kidnappings, murders, bank robberies, drug trafficking and manufacturing, firearms violations, and fugitive matters.  I also investigate the sexual exploitation of children through prostitution, and the production of child pornography.

2.     As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.      The facts and conclusions in this affidavit are based on my personal knowledge gained from my participation in this investigation, my training and experience, and information gained from other agents, local law enforcement, and reports.  Since this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included all of the facts of which I am aware in this investigation.

4.     This affidavit is in support of an application for a search warrant for content and records associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.  Specifically, the application seeks a warrant to search content and records related to Facebook accounts associated with User IDs, Monica Merlin, and KaydaBoy T-Fetti.  The information to be searched is described in the following paragraphs and in the attachments to this affidavit.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

5.　　As set forth in this affidavit, I have probable cause to believe that evidence of violations of 18 United States Code §§ 1591(a)(1), sex trafficking of a children, and 1594(c), conspiracy to engage in the sex trafficking of children, is located in and within the aforementioned account. I have reason to believe that the member account will have stored information and communications that are relevant to this investigation. Thus, as outlined below, and based on my training and experience, there is probable cause to believe that evidence, fruits and/or instrumentalities of the aforementioned crimes are located in this account.

### STATUTORY VIOLATIONS

6.　　This investigation concerns alleged violations of Title 18, United States Code, §§ 1591(a)(1), (b)(2) and 1594(c).

a.　　18 U.S.C. § 1591(a)(1), (b)(2) prohibits a person from knowingly, in or affecting interstate commerce, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting, by any means a person, knowing that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

b.　　18 U.S.C. § 1594(c) prohibits a person from knowingly conspiring with another to engage in the sex trafficking of a minor as proscribed in 18 U.S.C. § 1591(a)(1).

### DEFINITIONS

7.　　The following definitions apply to this affidavit and its attachments:

a.　　The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b.      "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

c.      "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

d.      "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

e.      A "Preservation Letter" is a letter governmental entities may issue to Internet providers pursuant to 18 U.S.C. § 2703(f) to ensure that the Internet Providers preserve records in its possession. The preservation of such records is necessary given the dynamic nature of digital records that may be deleted.

## BACKGROUND REGARDING PROSITUTION

8.      I have had both training and experience in the investigation of child exploitation matters, including the commercial sexual exploitation of minors. Based on my training, experience and knowledge, and consultations with other law enforcement officers, I know the following:

a.  Individuals involved in illicit commercial sex, including the prostitution of adults and children, communicate about such activity through the internet, using electronic mail (email) and personal social networking websites;

b.  Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media on websites such as Craig's List and backpage.com;

c.  Individuals involved in illicit commercial sex often attempt to recruit individuals to work in the commercial sex trade by communicating with them through text messaging or by using social media applications such as MocoSpace, Facebook, and KIK;

d.  Individuals involved in illicit commercial sex often maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

e.  Individuals involved in illicit commercial sex create and maintain electronic records that contain the names of associates and/or coconspirators involved in prostitution;

f.  Individuals involved in illicit commercial sex use cellular telephones, personal digital assistants (PDAs), desktop and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, personal digital assistants (PDAs), and notebook computers to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet based correspondence. These electronic devices allow individuals involved in illicit commercial sex to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic

contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients.  Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, personal digital assistants (PDAs), desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution.

## TECHNICAL INFORMATION REGARDING FACEBOOK

9.      Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

10.      Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

11.      Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend

Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

  12. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

  13. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

14.     Facebook has a Photos application, where users can upload an unlimited number of albums and photos.  Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

15.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

16.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

17.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

18.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

19.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

20.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, Live Journal, and Blogger.

21.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

22.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

24.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to

videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

25.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

26.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

27.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## BACKGROUND OF THE INVESTIGATION

28.     On November 4, 2016, a 16-year-old female, whose true identity is known to law enforcement and will hereinafter be referred to as "Victim," disclosed to a high school counselor that she had been sexually abused. The school counselor contacted law enforcement and reported the Victim's disclosure.

29.     Beginning on November 4, 2016, the Victim met with law enforcement, and provided the following information, in substance:

a.      During the summer of 2016, the Victim began using the social media site, MocoSpace, to post her picture and advertise herself for the purposes of prostitution.

b.      While on MocoSpace, the Victim began communicating with an individual later identified as Monica Morales.[1]  Morales told the Victim that she (Victim) could make money by working with her (Morales).

c.      The Victim agreed to meet with Morales at a park located in Olivehurst, in the State and Eastern District of California.

d.      When the Victim arrived at the park, Morales was waiting for her in a black-colored sedan (hereinafter "Morales' Vehicle"). Also in Morales' Vehicle was an adult male, later identified as Tion Makeise Foster. The Victim got into the back seat of Morales' Vehicle, and Morales began driving. At some point during this time, the Victim told Morales and Foster that she was only 16 years old.

e.      After driving for approximately two hours, Morales stopped at a gas station that also contained a McDonald's restaurant. Foster took the Victim into the

---

[1] Monica Morales is also known as Monica Merlin, Monica Merlin Morales, Monica M. Merlinmorales, and Monica Merlinmorales.

store, and then into the bathroom. Foster locked the bathroom door and directed the Victim to pull down her shorts so he could have sex with her, telling the Victim he had to "try her out" before he could prostitute her. Foster had sexual intercourse with the Victim, after which they returned to Morales in Morales' Vehicle.

f.     The three drove to Santa Rosa, in the State and Northern District of California. Once in Santa Rosa, Foster told the Victim he did not have any money for gas, so if she wanted to go home, she would have to earn it.

g.     Morales and the Victim went into a clothing store and picked out some lingerie. The Victim returned to Morales' Vehicle, at which point Foster and Morales went back into the store and purchased the lingerie. Foster later took pictures of the Victim wearing the lingerie, but which did not show her face. The Victim believes Foster posted these on the website "backpage.com."

h.     Foster began receiving phone calls on his cell phone. He handed his phone to the Victim who would then negotiate with the "john." (The term "john" refers to the person who is paying for sex with a prostitute.) The Victim would then meet with the john, get into his car, and drive to a secluded location. The john would then pay the Victim to engage in sexual acts with him. Upon returning to Morales and Foster, the Victim gave the money to Foster. In return, Foster either gave the Victim $20 or food.

i.     On at least one occasion, the Victim engaged in sexual acts with both Foster and Morales at the same time.

j.     While in Santa Rosa, Foster lost the mobile phone he used to take the Victim's picture and to communicate with the Johns.

k.     After Foster lost his mobile phone, Morales, Foster and the Victim traveled to Oakland, California, to visit Foster's cousin. Prior to arriving, Foster told the Victim that his cousin also "pimped out" females, and that the cousin would

try to get the Victim to stay and work with him. After arriving at the house, the Victim was approached by some of Foster's family members who tried to talk her into staying with them.

l.    At some point, after arriving in Oakland, Foster obtained a new mobile phone.

m.    After approximately one week, Morales and Foster took the Victim back to Olivehurst. The Victim estimates she performed sexual acts with five separate men during the week.

30.    After returning home, the Victim was in contact with Foster through the social media site, Facebook.

31.    On November 7, 2016, with law enforcement present, the Victim began communicating with Foster through a Facebook messaging application. Foster's Facebook user name was displayed as "**KaydaBoy T-Fetti.**" During this online conversation, Foster sent the Victim a video which depicted him sliding his hand up and down his erect penis. Foster then requested the Victim to send him a "normal pic of you and a naked pic." The following are messages which Foster and the Victim then exchanged:

**Foster:** What you doing? & when can I pick you up again? To fuck that tight pussy again? & have you fucked anyone else raw since me ?

**Victim**: If you pick me up will I make more money thaan last time

**Foster**: Yea you will my phones been ringing since you left but this time you gotta stay a month cause I'm taking you everywhere with me till you got at least 10 bands in your pocket. Have you fucked anyone else raw since me

**Victim**: can you pick me up today

**Foster**: No if you wanna be picked up ill get a rental and pick you up the 30th of this month but you do know during the day I'm fucking you at night you'll be working. And also in the day time I have a few things I need you to do but you have to do them naked cause all the other women will be naked as well

. . . .

**Victim**: I wanna be with you but I don't know if I want a baby right now im only 16

**Foster**:  Please have my baby I'll take care of it for you till your 18 let me just get
you pregnant

32.     On November 7, 2016, law enforcement conducted a pretext, consensually-recorded phone conversation between the Victim and Foster.  Utilizing a law enforcement phone system, the Victim placed a call to telephone number 707-703-8558, Foster's Phone. Foster answered the phone, and the two spoke for approximately 14 minutes and 55 seconds. During the call, Foster provided the following information:

a.      Foster has a friend who just got out of jail.  The friend has three girls he
wants to start pimping.  The three girls are older than the Victim, with two
being Hispanic and one White.  The girls have never had a pimp before.  The
Victim would be working with these girls.

b.      Foster stated they would be traveling to Reno, would be getting rooms for the
girls, and would be moving around from place to place.

33.     On November 15, 2016, with law enforcement present, the Victim began communicating with Morales through a Facebook messaging application.  Morales Facebook user name was displayed as "**Monica Merlin**."  Using the messaging application, the Victim asked Morales for her phone number, to which Morales provided telephone number 707-623-4641(Morales' Phone).

34.     On November 15, 2016, law enforcement conducted a pretext, consensually recorded phone conversation between the Victim and Morales.  Utilizing a law enforcement phone system, the Victim placed a call to telephone number 707-623-4641, Morales' Phone. Morales answered the phone, and it appears that she placed it on speaker mode, as both Morales and Foster spoke with the Victim.  The call lasted approximately nine minutes and 29 seconds.  The following was discussed during the phone call:

a.      Foster's name is "Tion";

b. The Victim previously engaged in sexual acts with Foster and Morales at the same time;

c. Foster and Morales knew the victim to be 16 years of age;

d. Foster and Morales planned on traveling to pick the Victim up in early December;

e. The plan was to have two other unidentified males, along with three other girls, travel with Foster and Morales;

f. The three other girls would also be engage in commercial sex acts;

g. Morales would not work as a prostitute;

h. Foster and Morales would rent rooms (as opposed to the car dates the Victim participated in while in Santa Rosa); and,

i. Foster and Morales would be close by when the Victim was to be with her "dates."

35. On December 5, 2017, based on a Criminal Complaint, the Honorable Carolyn K. Delany, United States Magistrate Judge, Eastern District of California, issued federal arrest warrants charging both Foster and Morales with violations of Title 18, U.S.C. § 2423(a), (e), Conspiracy to transport a minor for the purpose of prostitution, and Title 18, U.S.C. 1594(c), Conspiracy to engage in the sex trafficking of children, case number 2:16-MJ-0208 CKD.

36. On December 6, 2016, Foster was arrested by the Citrus Heights Police Department for violations of California Penal Code sections 266I, Pimping and Pandering; 236.1(C), Human Trafficking; 25850(C), Carrying a Loaded Firearm; 25400(A), and Carrying a Concealed Weapon. Those charges related to an alleged victim different from the victim in this case. Foster remains in custody on those state charges.

37. On December 8, 2016, Morales was arrested by the FBI pursuant to the Federal Arrest Warrant issued on December 5, 2016.

38.     Subsequent to her arrest, Morales waived her rights per *Miranda*.  During the custodial interview, Morales stated she used the social media application Facebook.

39.     On December 22, 2016, the grand jury returned an indictment charging both Morales and Foster with 18 U.S.C. § 1591(a)(1), (b)(2), sex trafficking of a minor, and 18 U.S.C. § 1594(c), conspiracy to engage in sex trafficking of a minor.

40.     On November 7, 2016, November 8, 2016, and again on December 9, 2016, law enforcement submitted preservation requests to Facebook for the Facebook User ID's described in Attachment A.  Facebook assigned case numbers 925803, 926808, 926812, and 953913 respectively to these requests.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

42.     For the reasons stated above, there is probable cause to believe that on the computer systems in control of Facebook there exists evidence of a crime, contraband and/or fruits of a crime.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Facebook User IDs described in Attachment A were used to facilitate the sex trafficking of children and a conspiracy to do the same.  Accordingly, a search warrant is requested.

43.     This Court has jurisdiction to issue the requested warrant because it is "a

court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

44.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Andrew D. Porristel
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me
This ___ day of January, 2017.

HON. EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

Michele Beckwith
Assistant United States Attorney

## ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

This warrant applies to information related to  the Facebook accounts associated with User IDs

**Monica Merlin,** and

**KaydaBoy T-Fetti**

which is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California, and previously preserved under Facebook case numbers 925803, 926808, 926812, and 953913.

**ATTACHMENT B**
**Particular Items to be Seized**

1. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including Monica Morales and Tion Foster: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities;

    (c)    All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

    (d)    All Neoprints, including profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event

postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)   All "check ins" and other location information;

(g)   All IP logs, including all records of the IP addresses that logged into the account;

(h)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that the account is or was a "fan" of;

(j)   All past and present lists of friends created by the accounts;

(k)   All records of Facebook searches performed by the accounts;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The length of service (including start date), the types of service utilized by the users, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the accounts;

(o)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, U.S.C. §§ 1591(a)(1) and 1594, involving Monica Morales and Tion Foster since June 1st, 2016 including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)   All communications between Morales and/or Foster and any other individuals that tend to show recruitment and/or enticement for the purpose of prostitution, all photographs which portray Foster and/or Morales in pimping situations or activities, any information related to commercial sex acts, including but not limited to information about pricing of such acts, hotels or motels, meeting times and locations, contact information of those involved in prostitution, photos or videos displaying individuals in a sexually suggestive manner, advertisements, and any postings related to pimping and/or prostitution.

(b)   Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

(c)   Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.